Good morning, Your Honors. May it please the Court, my name is Heinz Binder. I represent the appellant, Mr. William Hawkins. This is a matter of first impression for the Ninth Circuit. It's dealing with Bankruptcy Code Section 523A1C. And A1C is the exception to a tax discharge. It has two components. It is a fraudulent tax return filing component. And it has a component that is referred to as willfully attempt in any manner to evade or defeat such tax. The latter component is the component that we are dealing with here today. The Ninth Circuit has spoken on the definition of fraudulent tax return in the matter of McKay. Counsel, it looked as though there was not much, if any, circuit authority directly in point. But there's a scattering of district court cases and bankruptcy court cases that seem to use the catch-all language in 7201 and the Supreme Court decision interpreting it to mean that if you know you owe taxes and you're spending more than you make on living on your lifestyle, that's evasion. Why isn't it?  The first reason is that the phrase willful in that sentence modifies the word attempt to evade. Under State law in Alaska, willful is the jury's usually instructed that it means some evil intent, some intent and mental state, the nature of which is evil. But under Federal law, I don't think that's true. Is that right? So, first of all, there are seven circuits that have discussed the phrase willful, and I'm asking this circuit to disagree with those seven, and I'll explain why in a moment. But there is a better standard of willfulness in a matter called, and I'm going to try this, Kavaahu v. Geiger, Supreme Court decision 1998. In Kavaahu, the ---- How do you spell it? I knew you were going to ask that. It's in my brief, and I apologize. Okay. Never mind then. In Kavaahu, the Court looked at 523A6, which is a willful and malicious injury. And the Court said in Kavaahu, debts arising from reckless or negligence-inflicted injuries do not fall within willful 523A6. And in that case, it said willful modifies the word injury, which requires that you have an intent to cause the injury rather than an intent to act. And in that case, Hawkins would therefore have to find, this Court would therefore have to find that Hawkins intended that by his spending, his willful spending, his excessive spending, he intended not to pay the tax. Right. So let's leave that aside for the second. Let's credit your argument that willfulness has a different component. What about the dissolution proceedings in which I believe you personally testified that you were going to wait to file a bankruptcy in order to, for three years so you could discharge this tax? In other words, you were going to file a bankruptcy specifically to evade this tax. Why doesn't that satisfy even your definition of willful? So first of all, the testimony at that was not that they were not going to, that Mr. Hawkins would try nothing else other than to file bankruptcy. True. That he would have to file bankruptcy if the nothing else worked. But isn't it pretty clear that the purpose of the bankruptcy filing was to discharge this tax? Of course. And there's nothing wrong with that. And that's the question is whether or not that testimony and the admitted purpose is sufficient to find a willful evasion. Then every one of my clients who owes taxes would be found willful. Well, does every single one of your clients live beyond their means and with excess? The vast majority of them do, Your Honor. I mean, that's kind of the definition of it. Well, they're in trouble then. I understand under this standard they're in trouble, which is why I'm here today to say to you this is not an appropriate standard. It's not the purpose of the bankruptcy statute to allow someone to avoid debts that are incurred despite knowing that there's not enough money to pay them. Debts that are excessive, you know, luxurious cars, planes, boats, private school tuition, it's not the purpose of the bankruptcy code to allow those who profess to be unable to pay their debts to maneuver in such a way to be able to continue to live that lifestyle and avoid the payment of taxes. Well, you would have to find that Mr. Hawkins lived that lifestyle with the intent not to pay the taxes. He didn't increase his lifestyle. He didn't go from $20,000 a month to $90,000 a month. He was at $90,000 a month. There's no denying that. He, in fact, decreased it by the time he went into bankruptcy. But I don't think that's really the issue. This is a matter of statutory construction. Well, it's a way for us to determine whether or not his actions were willful. That's what we have to look at to determine whether or not it was willful on his part to avoid the payment of taxes. His actions in spending money were willful. There's no doubt. I mean, he spent money. But at the same time, the question is, were they willful for the purpose of avoiding and evading and defeating the taxes? Let me make sure I understand that. You're saying the specific intent necessary is not merely an intent to spend money on living expenses. It has to be an intent to avoid the taxes due by doing so. That's exactly what — It has to be a means of avoiding letting the government get the money. That's exactly what Kava Hau v. Geiger says. So, for example, I suppose as close as you'd get with that interpretation would be somebody who's been living on $100,000 a year, and then he sees that the government's going to grab all his money. So he goes out and makes a whole bunch of extravagant expenses and lives higher than he ever has just because he resents giving the money to the government. That's a good example. The cases have many examples. Kind of like somebody going broke rather than pay alimony, that kind of thing. That happens. The cases have many examples. Let me ask you something else. Of course. Am I correct in thinking that the language we're interpreting is the identical language in 7201, the felony statute? So if we say living high when you know you owe taxes is evasion for bankruptcy purposes, we're also going to be saying, and it's a felony. Is there any case law that draws a distinction? Well, there are cases that say you shouldn't be interpreting the bankruptcy code and the internal revenue code. I don't necessarily agree with those cases, but there are cases that say that. You're correct that 7201 has virtually the same identical language. And 7201 in Spies, another U.S. Supreme Court case. My mental process in going through this case, preparing, was I never litigated a bankruptcy case in private practice. I had a number of tax evasion cases as a district judge. So I immediately thought of felony tax evasion. And I was wondering just what I asked you. Gee, is living high when you know you owe the government money a felony? And I know the words are the same, and I'm wondering if there's a case that says even if the words are the same, you give different jury instructions for what the words mean. I'm not aware of a case that finds that if you have violated 523, that you have therefore automatically violated 7201. Is there a case that says the opposite, if you violated 523, that does not imply a violation of 7201? I guess it would depend. No, there is not. And I guess it's not. Well, so one thing, you have to prove it beyond a reasonable doubt for a criminal conviction that you wouldn't have to. I was just going to say it depends on the standard. I guess it also depends on the definition of the word it. What do you have to prove? Well, so I look at these other circuits. As I said, there are seven other circuits. I know that there are cases that use criminal cases to interpret the bankruptcy language. Yes. Yes, but there are also cases. So in the other seven circuits, when they use the word willfulness, the circuits kind of cut and pasted a phrase where they said, look, we're going to look at willful intent to evade and defeat attacks with two prongs. One's the willful prong, one's the conduct. One's the mental state prong, one's the conduct prong. Well, when you divorce those two, when you say we're going to look at the mental state separately from the conduct, you've defeated the purpose of the modifier willful attempt. And the way these seven circuits deal with willful, that's very interesting, they define it as a civil willfulness. And where do they get that discussion from? They say that civil willfulness is a mental state in which the debtor had a duty, knew he had that duty, and voluntarily, intentionally violated that duty. And they say that is the evidence of willfulness. That, again, fits all of my clients, by the way. Knew he had a duty, had a duty under the law, and voluntarily didn't pay the tax. That language comes out of trust fund tax language. And as we all know, trust fund tax language is a different animal than personal income tax. Trust fund tax ---- Wait a minute. Could you repeat what you said? I lost the thread. This language comes out of the Internal Revenue Code section that defines trust funds. You mean withholding taxes when you withhold the employee share and then you don't pay it over to the Feds? And the responsible individual who doesn't pay is then checked through these words, had a duty under the law. Which language comes out of that? All of these circuits. Every single one of the seven circuits has the identical language. So you have seven circuits against you. We haven't opined on it yet. But before we create an inter-circuit conflict, we sort of have to take a deep breath. Now, tell me why you think it's so obvious that the other seven circuits are wrong, other than what you just told us. So there are a number of reasons. The first point is that the seven circuits take this language in 523 and they break it into two parts, a willful test and a ---- I'm sorry, a mental state test and a conduct test. The second is that not one of these circuits, not one, looks at the Supreme Court case of Kavahau. Right.  Well, it's a 523A6 case. It's a 523. But it's the willful in the same 523 sections. How can you take the word willful in 523A6 and define it differently as to the IRS? It's not fair. It gives the IRS a tremendous upper hand. And your third point? There is no reported decision of lavish spending in those circuits in which there is only lavish spending. There are bad acts in all of those, transfers of assets, concealments, transfers to spouses, failure to file tax returns, indictments, failure to make payments and taxes for eight years. The bad acts go on and on and on. And in Hawkins, his bad act was he spent. He didn't increase spending. He stayed at the same level the entire time. And Judge Carlson and the district court said this act of spending because he's a smart man and he should know better was by itself willful. And I can't buy that. That gets all of my clients in trouble. Your time has expired or nearly, but we'll give you some time for rebuttal. Thank you. Hear from the government. Thank you. Thank you, Your Honor. Good morning. May it please the Court. I am Rachel Wollitzer representing the Appalachian United States. The Bankruptcy Court correctly determined that Tripp Hawkins willfully attempted to evade or defeat his tax liability. I have a couple of questions for you. Yes, Your Honor. It looks to me as though what your argument would amount to, what the holding of this Court would amount to if we accept your argument, is that knowingly living beyond your means when you know you owe taxes and you are technically insolvent is tax evasion. Your Honor, a number of other circuits have held. I didn't ask you about other circuits yet. I asked you if that proposition would be our holding. It's really a factual determination, Your Honor. So the Bankruptcy Court ---- Wait a minute. You've twice avoided answering my question. I'm not asking for an argument or a defense at this point of that proposition. I'm asking if that is the proposition that you would have us hold. Our argument is that lavish spending can support a determination of a willful attempt. I know it can be relevant. It can be relevant. For example, the hypothetical I gave your colleague where somebody has been living on $100,000 a year, realizes that his savings that he's accumulated by living frugally are all going to go to the government. So he says, I'm not going to do that, and raises it to $200,000 a year. The spending is relevant. But if I understand your proposition correctly, it goes beyond that. So you're saying that you want a holding that knowingly living beyond your means when you know that you owe taxes and you know that you're insolvent is tax evasion? Well, the Court does not have to determine that in this case because there were other factors. You're saying is that the holding you want from us? We would argue that that is correct, but the Court does not need to know that. You need that holding for this case. No, we don't. Okay. Why don't you need that holding for this case? Because the bankruptcy court made its finding of a willful attempt to evade or defeat based on the total picture. Well, what is the picture beyond that? When I look at the cases that you cite, I find all these distinctions. Like in Jacob's, the Eleventh Circuit case, he titled the house in his wife's name to keep the tax liens off it. In Gardner, the Sixth Circuit case, he put a nominee account in his secretary's name. In Fegley, the Third Circuit case, he failed to file a tax return. He didn't pay the taxes when he had the ability to pay. The Third Circuit case is unpublished. So every one of them doesn't do what you want. They say it's relevant, and certainly it is, as in the hypothetical that I gave. People do increase their spending sometimes. The cases that I've seen most often are to avoid paying alimony, but it can also be to avoid paying anything else. But I'm not aware of a case that says that living beyond your means when you know you owe taxes, knowingly living beyond your means when you know that you owe taxes and are insolvent is enough. Just that it's relevant. And I think you're saying we don't have to decide that because there are other facts in this case. What? Okay. I would like to just make one point, which is that there are no cases that have lower court or circuit court cases that have said lavish spending is not enough. So there are no – there's no authority either way. Every court is very careful to avoid limiting tax evasion to A, B, C, and D because every court knows that people are smart enough to figure out, gee, as long as they don't do A, B, C, or D, I'm home free, so I'll evade taxes by doing E. Well, before you get into the specifics of the question, which is important, why do you think that lavish spending alone can be enough? Because if that is the rule, then about half – most of the bankruptcies filed in the United States will constitute a willful evasion of taxes. And if Congress had intended – if Congress had intended that to be the case, it would have set forth that in the Code, and it didn't. Your Honor, I understand your point. So just confine yourself to that legal question. Why do you think the Code supports a notion that lavish spending alone constitutes willful evasion of taxes? Okay. The language of 523A1C accepts from discharge a tax with respect to which the debtor willfully attempted in any manner to evade or defeat such tax. So there are two aspects of that language that are important in focusing on how that language is interpreted. The first is that Congress and the Spies case recognize this, and other circuits have recognized it in the 523A1C context. There is no limitation on the manner in which a taxpayer can willfully attempt to evade or defeat tax. It's a factual question. That's that A, B, C, D, E thing. Well, there is no – there are no limitations. You might not have noticed my question about that. Never mind. Yes, Your Honor. The other thing is the Bankruptcy Court not only said that the spending was lavish, but it was unnecessary, maintaining several residences and a plane as opposed to taking – a private plane as opposed to taking a commercial transportation. So it was not only lavish, but it was also unnecessary. It was extraordinary. Astounding, really. Well, I suppose. But, you know, you get all these cases, you know, where people don't vary their spending, or perhaps their spending, as Judge Kleinfeld talks about, you know, to avoid some other types of obligations. But if we have to infer that any time somebody is spending excessively prior to bankruptcy that it's a willful attempt to evade taxes, that's a pretty big leap. Well, again, it's not necessary to reach – No, I know. But I'm stopping you right there because that's your first position is that – It's our first position. Right. But it isn't necessary to reach that. All right. But getting back to – Let's get back to Judge Kleinfeld's question then. About what other kind of – What in this case distinguishes it aside from maintaining spending level? Judge Thomas, you said it yourself. He testified and stated in the bankruptcy – in the child support modification proceeding that he planned to discharge his liabilities in bankruptcy. His attorney went through a detailed analysis in the hearing of the timing – Everybody plans to discharge their liabilities in bankruptcy. That's what it's for. Okay. That's true, Your Honor, except that the tax liabilities were the only liabilities. Well, that's often the case. It's also often the case it's a medical liability. And I imagine a lot of hospitals would like to say the fraud exception applies, ran up all these medical expenses and planned to discharge them. Mr. Hawkins did not have any other liabilities except for a lien on a Cadillac. Here's – here's really what my problem is. He's not like my guy who decided to double his spending in order to avoid paying his alimony. This guy was – and he's not like a government employee getting a step increase every year and every now and then a promotion where his income just steadily goes up. He was one of the richest men in the world, and then all of a sudden he's one of the poorest. As somebody who owes tens of millions of dollars, he's a whole lot poorer than somebody who has nothing and owes nothing. He's poorer than these people on the street in a way. And when he got the plane, he was one of the richest men in the world. Before 3DO failed, he was one of the richest men in the world. Even though it would be pretty extravagant for you or me to buy a private plane, it wasn't for him. And then after he becomes one of the poorest men in the world, he's divesting. He gets rid of the plane. He holds on to the houses during the bubble and lets them go up a lot until basically the IRS forces a sale at the top and gets the money. As for the private school tuition, it kind of depends where people live. A lot of people who live in old neighborhoods in Chicago where the public schools aren't so good regard it as a necessity, and they don't really like the government deciding whether it's necessary because it's their own kids. As far as you made a big deal out of the $75,000 Cadillac SUV, it's a long time since a Cadillac was a luxury brand. And you can spend $67,000 on a Ford pickup truck. You can spend $75,000 on an SUV. I didn't understand why that shows, aha, I'm trying to throw my money down the river so that the IRS doesn't get it. It shows that his wife, who you say was too ‑‑ she was just some pretty young thing that didn't understand anything about money. That's basically what the bankruptcy court says. So that's why she doesn't get hammered, gets discharged. And she's the one that bought the SUV. I just don't get it. I don't get what he did that shows an intent, that shows he was attempting to evade taxes as opposed to attempting to preserve as much of his living standard as he could, now that he'd gone from fabulously rich to quite spectacularly poor. Okay. I'd like to get to the mental state, because really it is a factual determination. The bankruptcy court went through the same analysis. Okay. That's what I just asked you about, the facts. And I showed you why I'm having trouble with them. He bought all these extravagances when he's one of the richest men in the world. And then he's shedding them when he becomes one of the poorest. Okay. He did not, Your Honor. He held on. Again, he held on to the Atherton license. You can't shed them and you can't shed them immediately. Real estate is not very liquid. He did shed the plane. He kept the house for five years while he was being audited by the IRS, the Atherton house, that he bought for $3.5 million and sold for $6 million. I mean, looking at that, at the house, for example, anybody, any taxpayer in his situation would have a pretty good guess that if a Seven Sisters accounting firm put him into these foreign tax shelters, either the accounting firm would turn out to be right and his taxes would be okay, or the accounting firm would turn out to have been way over the edge and their malpractice carrier would cover it. And I don't really see why, as soon as he knows that the IRS doesn't buy the accounting firm's fancy footwork on the tax shelters, that he immediately has to start living like the poor man that he became. He should have at least set aside the money, Your Honor, because he's never contested. He couldn't. He didn't have the money. He had this new company, 3DO. He bothered and poured all his money into it trying to save it, and it failed. Well, he was gambling the government's money and the U.S. taxpayers' money on a business. A lot of taxpayers' money. Trying to save your business is tax evasion. Your Honor, it was a combination. It's the totality of the conduct. The bankruptcy court made a factual determination, heard the evidence, saw Mr. Hawkins' tax decline. Now, it's the same language as the felony statute. Is trying to save your business a felony other than for the taxes, it's preponderance of evidence, and for the felony, it's beyond reasonable doubt? No, Your Honor. All of the circuits that have interpreted the statute have said, 553A1C, have said that it is not interpreted the same as Section 7201. Oh, give me the best authority for that, because I thought the law was the opposite, that they used the felony cases to interpret the bankruptcy statute. No, Your Honor. On page 63 of our brief. Oh, you don't have a case just here? The amicus brief made this argument, and the cases are the argument that the amicus brief said that 523A1C should be construed consistently with 7201. That's on page 63 of our brief. We're discussing it. Of our brief. You cite a couple of cases, but you – oh, I see what you're saying. The argument of the amicus has been rejected by those circuits considering it. So all those cases there, Bruner, Totey, Fegley, Dalton, those four circuit cases, different – those are each different circuits. Bruner and Dalton, Fegley, and what's the fourth one you say? Bruner, Totey, Dalton, and Fegley. Cite it on page 63. Page 63. I'm looking at it. I don't see the Totey case you're talking about. Page 63. Bruner. Are you looking at it? I'm looking at it. Where? Totey. Oh, I see it. Okay. Thanks. Six circuit case. Got it. I'll check and see if they stand for what you say. They've all said that section 523A1C should not be interpreted the same as section 7201. And the Supreme Court in the Bryan case cited on page 64 of our brief has said, quote, The word willfully is sometimes said to be a word of many meanings, whose construction is often dependent on the context in which it appears. I would like to also – In the overall scheme of the bankruptcy code, the code – it's not a court of blame, the bankruptcy court. It's a court where people get fresh starts. It's not a court of blame is what I said. But there are provisions that Congress set forth, like fraudulent transfers, and that means avoidable preferences, where you define transfers of property and how you get it back into the bankruptcy court or avoid discharge. What you seem to be arguing is for a broader proposition that lifestyle alone or choices you make economically that are not otherwise sanctionable under the bankruptcy codes or subject can be considered tax evasion. And that seems to be – I realize that the other circuits have used that as a component, but it seems to me to be a radical change from the spirit of the bankruptcy code. Well, 523A1 – For example, if you – you list all the things that the court relied on, but most of it is just even spending. I mean, it's not increased spending. Well, the intent to discharge his liabilities in the bankruptcy – and I would like to point out, so this doesn't get ignored, in November of 2002, which is during the pendency of the audit, after Mr. Hawkins had received an estimate of the amount that his likely liabilities were going to be, he bought a vacation home in La Jolla for $2.6 million in November of 2002. The audit commenced in the summer of 2001. Why? Why did he buy a vacation home while he's being audited? He held on to this home – Why shouldn't he? Because he – Rich people get audited. A lot of them get audited every year. It's not a big deal. He only had an opinion that it was 50-50 chance that his position would be upheld. That's all he had. So it's a showing of intent. Not that he shouldn't have a vacation home, but it all goes to the intent of whether or not he was spending money in order to not have it available when it was time to pay his taxes. It goes to conduct. It goes to intent. Except that he's buying property that would be subject to the IRS lien if you ever got it. I mean, I don't know how to advise a client who is undergoing an audit, if I were an attorney, and says, I'm going to buy a vacation home. And I might say, well, that's irresponsible, but it's hard for me to think that it would be tax evasion. It's just part of the broader picture. And again – He was spending money, but I mean, the willfulness means to avoid taxes. Now, I can certainly understand if you're transferring it into trusts, if you're transferring it into other people's names, where the government could not reach it. That would be an entirely different matter. But investing in property that would eventually be subject to an IRS lien doesn't strike me as willful tax evasion. Help me out with that. Okay. The law is four circuits have held, all of the circuits who have addressed this question have held, specific intent to evade tax is not required. It's not required under this language. It's a broadly read statute. How is it evading taxes to invest in property that might be subject to an IRS lien? I'm sorry? How is it evading taxes to invest in property, real property, that's going to be subject to an IRS lien if, in fact, he owes taxes? The statute also applies to attempts to evade or defeat the tax. So it's a very broadly worded statute. And all of the courts of appeals have held that all you have to do is show that the debtor engaged in the relevant conduct voluntarily, consciously or knowingly and intentionally. There is no requirement, as in the criminal statutes, for a specific intent to evade. He does not have to wake up in the morning and say, I'm going to evade taxes today. The bankruptcy court looks at the totality of the conduct, the lavish spending, the intent to file bankruptcy to discharge the liabilities, the grossly inadequate offer in compromise, which is discussed in our brief, and the failure to make a single payment of these taxes, a single voluntary payment of these taxes until Federal tax liens were filed against his house. Of course, a lien is much more difficult to collect on than money that's just, that's readily liquidated in an account. A lien, Your Honor? A lien on property is much more difficult for the IRS to collect on than if there is money that's liquidated and available in a bank account. Well, he had stock accounts, investment accounts. When he made his offer in compromise, he had $8 million in an investment account in addition to the two homes, the four luxury cars, and all he offered the IRS was $8 million, which he could have paid with the stock account. Let me ask a pragmatic question. I mean, now you, I don't know what the situation is now in terms of his ability to pay the tax, but what hope do you have of collection? I really couldn't speak to that, Your Honor. There was the reason I ask is that we're, you know, we're talking about if you win, you may get nothing. And the reason I ask is I'm wondering whether the assistance of the circuit mediator might help in terms of getting a practical solution to this case. I'm sorry, Your Honor. There was mediation. So you don't think it's going to be successful? That would be useful. We've already tried, Your Honor. All right. Thank you very much for your argument. Do you want rebuttal? We'll give you a minute or two if you do. So, counsel, while you're coming, do you think the rich, wealthy people should be treated differently because they can afford more luxuries than people who are not wealthy? Absolutely not. Absolutely not. The standard of lavish living can apply to non-wealthy people. It can apply to anybody who spends more than their earned income. That's what Judge Carlson said. You spend more than your earned income. Guess what? That's all my clients in every single situation. They spend more than they make. That's why they come to see me. I guess that's all the kids in law school, too, isn't it? I don't see too many law school kids living lavishly and flying on private jets. I guess my definition of lavish is different in that I've never been wealthy. Well, if lavish living is a willful intent to evade and avoid attacks, willful intent or willful attempt. Well, there was an expressed intent in this case. To file bankruptcy. For the purpose of avoiding taxes. I mean, it was clearly stated that the purpose of filing bankruptcy was to not have to pay the taxes. I don't think the intent gets much clearer than that. There's nothing wrong with that. Everybody gets to file bankruptcy. But then the government can look at that along with the spending to make a determination that it was an attempt to avoid paying taxes or to evade the taxes. There's nothing wrong with it. There's nothing wrong with saying that you intend to kill somebody until you do it. So it's part of the equation and part of the evidence. Well, I think that if this court were to rule that a decision to file bankruptcy was a form of intent to evade and avoid attacks, help me out with that one. What are we talking about? Well, you know, we do have a case law that's relevant to bad faith filing of bankruptcies, in which people do look at some of those kind of elements. Now, this wasn't the government did not seek to dismiss the bankruptcy as bad faith filing. But if you have a single credit or bankruptcy, that often comes up. So it is relevant, I think. It certainly does. In this case, we had two creditors. We had the IRS and the Franchise Tax Board. And as the amicus correctly pointed out, had we taken our $8 million and given it to the state of California, would that have been an intent or a willful attempt to evade or avoid the federal tax? Or had we done the opposite? Would that have been a willful attempt to avoid the Franchise Tax Board? At no point in time did Mr. Hawkins have an ability to move in any direction because he didn't have enough money to pay it all, and he didn't know who to pay it to. And what happened is that the Franchise Tax Board came around and levied his retirement account, his stock funds, and everything else, took about $6 or $7 million. IRS placed its liens, Hawkins sold his home so that the IRS could get their money, filed a Chapter 11, and by the time this trial started, the IRS and the Franchise Tax Board had received $21 million. That's not chump change. You could talk about no voluntary payments, but it's not chump change. $21 million. He was divested of everything. What's the status of the bankruptcy? Has it been finalized, closed? Okay. All right. Very good. Thank you. Thank you for your audience. Interesting case. And we will be in recess.
judges: Kleinfeld, Thomas, Rawlinson